LINDSAY, Judge.
The defendant, Hollis Lee Flournoy, pled guilty to simple burglary, in violation of LSA-R.S. 14:62, and was sentenced to imprisonment at hard labor for five years. He appealed, contending that the trial court imposed an excessive sentence. He also argued that LSA-R.S. 15:574.-4(A)(2)(a)(ii), which requires a recommendation by the division of probation and parole for an offender to be eligible for the intensive incarceration program, is unconstitutional. We affirm.
FACTS
On March 10, 1990, the defendant burglarized the Baker Brothers Tie Mill, his former place of employment. He removed three chain saws and an electric chain hoist from a small building on the premises. Subsequently, the authorities recovered two of the chain saws from an individual who reported buying them from a man called “Hi-Lee,” an alias of the defendant. Upon questioning, the defendant confessed to the burglary.
The defendant was charged with one count of simple burglary. Thereafter, he pled guilty as charged. At that time, the trial court ordered a presentence investigation (PSI) report. The probation and parole *1305 officer who compiled the report declined to recommend the defendant for probation or the intensive incarceration program. The trial court sentenced the defendant to serve five years at hard labor.
The defendant appealed. He assigned as error the following: (1) LSA-R.S. 15:574.-4(A)(2)(a)(ii) is unconstitutional; and (2) the trial court imposed an excessive sentence.
RECOMMENDATION OF PROBATION OFFICER FOR INTENSIVE INCARCERATION PROGRAM
The defendant challenges the constitutionality of LSA-R.S. 15:574.4(A)(2)(a)(ii). He contends that this provision, which lists the recommendation of the division of probation and parole as a prerequisite for eligibility in the intensive incarceration program, violates the constitutionally mandated doctrine of separation of powers. La. Const.1974 Art. II, Sec. 2. He asserts that it allows the executive branch, in the form of a probation and parole officer, to usurp the powers of the judicial branch by precluding a trial judge from sentencing an offender to the intensive incarceration program.
The Department of Public Safety and Corrections is charged with the administration of the intensive incarceration and intensive parole supervision program. Its responsibilities include formulation of eligibility standards. See LSA-R.S. 15:574.-3(D).
LSA-R.S. 15:574.4(A)(2)(a) states, in pertinent part:
The offender may be considered for participation in the program if all of the following conditions are met:
[[Image here]]
(ii) The court orders a presentence investigation report, as provided for in Code of Criminal Procedure Article 875, and the department, through the division of probation and parole, recommends to the sentencing court that the offender is particularly likely to respond affirmatively to participation in the program.
Other conditions of eligibility include the defendant receiving a sentence of seven years or less, as well as the recommendation of the trial court. Also, the secretary of the department (or his designee) must evaluate the defendant and find that he would affirmatively respond to the program, and the defendant must voluntarily enroll. See LSA-R.S. 15:574.4(A)(2)(a).
In support of his argument that the statute in question is unconstitutional, the defendant cites State v. LeCompte, 406 So.2d 1300 (La.1981). However, we find that the present case is clearly distinguishable. In LeCompte, the defendant argued that a statute violated the constitutional doctrine of separation of powers by allowing a trial court to reduce or suspend the severe mandatory sentences of certain drug offenders, due to the offenders’ cooperation with law enforcement officials, but only if the district attorney so moved. On rehearing, the Supreme Court upheld the constitutionality of the statute by interpreting it as not giving the district attorney exclusive authority to move for sentence reduction or suspension. However, the court stated that if the sentencing court’s decision to reduce or suspend the sentence was conditioned upon the district attorney’s arbitrary discretion, the consequent sentence would be as much the discretionary choice of the district attorney as that of the trial judge. The court indicated that that would be a violation of the doctrine of separation of powers because the district attorney should not have a role in the judicial function of sentencing.
However, the intensive incarceration and parole supervision program at issue in the present case is a special rehabilitative program provided by the Department of Public Safety and Corrections for the execution of certain hard labor sentences. The statutory provisions regulating the program are found in the chapter addressing reprieve, pardon and parole in Title 15 of the Revised Statutes. The program differs substantially from ordinary incarceration. Not all offenders are amenable to and would bene *1306 fit from this program. While compiling an offender’s PSI report, the probation and parole officer screens the offender to determine whether he meets the department’s criteria for program participation.[1] The probation and parole officer’s recommendation is a preliminary administrative determination which informs the trial court whether this special incarceration and parole program may be one for which the offender is suitable. In turn, the trial court may then make its own recommendation to the department, urging that the offender be further screened and considered for intensive incarceration or intensive parole supervision. However, as mentioned previously, an offender may be rejected by the department as unsuitable based upon its further investigation, or the offender may refuse to enroll.
During intensive incarceration, a participant’s conduct is constantly evaluated, and any violation of the rules and regulations will subject him to removal from the program. Should he be removed, he would then be required to continue to serve the balance of his sentence, as originally imposed by the trial court. Further, even if a participant completes the intensive incarceration program, the Board of Parole may still require him to serve the remainder of his sentence instead of releasing him under intensive parole supervision.
The provisions of the statute at issue do not infringe upon the trial court’s sentencing powers. The trial court has complete discretion in selecting an appropriate sentence for an offender. However, the trial court cannot sentence an offender to participate in the program; it can only recommend that he be considered for participation in the program. The trial court’s discretion in imposing sentence does not include dictating to the department the manner in which the sentence is to be executed. Nor does a sentencing court retain authority to determine an offender’s eligibility for parole, which is an administrative device for rehabilitation resting in the discretion of the Board of Parole. See LSA-R.S. 15:574.11(A). Thus, where the trial court lacks discretion to actually sentence an offender to serve in the program, it cannot be said that the provision requiring an initial recommendation by the probation and parole officer infringes upon the trial court’s sentencing powers.
Based on the foregoing, we find that the provisions of LSA-R.S. 15:574.4(A)(2)(a)(ii) do not constitute an infringement upon the sentencing powers of the trial court. Consequently, there is no violation of the doctrine of separation of powers, and the defendant’s argument against the statute’s constitutionality is without merit.
EXCESSIVE SENTENCE

Law

The defendant also contends that the trial court imposed an excessive sentence. In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
*1307 After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).

Discussion

The defendant argues that the trial court failed to properly consider certain mitigating factors in his favor. Specifically, he contends that the court did not consider the possibility of restitution to the victim of the burglary or a letter of recommendation submitted on his behalf by several deputies employed at the Webster Parish Penal Farm.
Our review of the record demonstrates that the trial court adequately considered the relevant factors under LSA-C.Cr.P. Art. 894.1. These factors included the defendant’s poor work record. The PSI report indicated that the defendant had never held a job for any length of time and that he was fired by several employers. This included his job at the burglarized mill, from which he was fired the week before the offense because of his refusal to work. Factors contributing to his failure to maintain employment were his inability to get along with his employers, his limited job skills, and his inability to read or write.
The 35-year-old defendant’s prior criminal record consisted of a 1970 driving offense as a juvenile and a 1979 arrest as an adult for simple burglary and five counts of felony theft. He was convicted on the simple burglary charge and was sentenced to serve three years at hard labor. However, the sentence was suspended, and the defendant was placed on supervised probation for three years with the special condition that he serve six months in the parish jail. While he was on probation, he had “extreme” difficulty maintaining employment.
The victim’s damages as a result of the present offense were initially estimated at $7,000. This sum represented the value of the items taken and the work time lost by the victim as a result of the burglary. However, this calculation did not take into consideration the recovery of two of the chain saws. According to the PSI report, the estimated value of the unrecovered items was $1,500. Also, the mill was shut down for an entire day, during which its gross revenues would have been about $4,000. Thus, the actual financial loss resulting from the offense was approximately $5,500.
The trial court was not favorably impressed with the defendant’s promise of restitution to the victim because he had only approached his former employer with the offer shortly before sentencing. Also, in view of the defendant’s consistent inability to maintain employment, the trial court could not envision how the defendant would be able to compensate the victim without resorting to criminal activity.
Another factor weighing against the defendant’s offer of restitution was his past failure to pay court-ordered child support. The trial judge was aware of this fact because of previous court proceedings. The defendant acknowledged this failure but stated that it resulted from his unemployment. The defendant’s failure to pay child support was also relevant in that it showed that the defendant’s incarceration would not be a hardship upon his dependents because he was not providing regular support for them.
The trial court received a letter from the superintendent and several deputies at the parish penal farm where the defendant had been incarcerated. They attested to his *1308 good conduct and remorse. The court also received another letter from a minister who conducted worship services attended by the defendant at the penal farm. However, the trial court reasonably chose to place greater reliance upon the PSI report, wherein the probation officer refused to recommend this second-felony offender for probation due to his lack of remorse and his indifference to the harm caused by the present offense. The probation officer also declined to recommend the defendant for the intensive incarceration program due to his limited intelligence and the resulting difficulty he would have completing some phases of the program. We see no error in the trial court’s decision to credit the PSI report over the opinions expressed in the other documents.
The maximum possible sentence for simple burglary is a fine of $2,000 and imprisonment, with or without hard labor, for twelve years. The sentence of five years at hard labor was in the lower range and was well within the trial court’s discretion. Given the seriousness of the offense and the general lack of mitigating factors, we find that the sentence is not excessive.
This assignment of error is without merit.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The probation and parole officer is an agent of the Department of Public Safety and Corrections, which makes the final determination of whether an offender will be admitted into the program.