490 So.2d 705 (1986)
STATE of Louisiana, Appellee,
v.
Richard L. COLEMAN, Appellant.
No. 17963-KA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
Rehearing Denied July 10, 1986.
Davenporrt, Files & Kelly by Thos. W. Davenport, Jr., Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before HALL, SEXTON and NORRIS, JJ.
PER CURIAM.
The defendant, Richard L. Coleman, was originally indicted by a grand jury for two counts of indecent behavior with a juvenile. In a plea bargain agreement, defendant was allowed to plead guilty to an amended bill of information charging him with four counts of indecent behavior with a juvenile in violation of LSA-R.S. 14:81.[*] He was sentenced on each count to serve two and one-half years at hard labor plus a fine of $1,500 and costs or an additional year in jail in default thereof. The sentences were ordered to be served consecutively. Upon payment of all the fines and costs, the hard labor sentences in counts one and three were suspended and the defendant was placed on supervised probation for a period of five years on each count, to run consecutively to each other, and to begin with the completion of the two terms of imprisonment. Pursuant to his probation, the defendant was ordered to continue to undergo psychological and psychiatric treatment and therapy under a qualified and competent psychiatrist. In addition, Coleman was ordered to avoid all contact with juveniles and to make restitution to the parents of the victims for any medical expenses necessitated by these offenses as determined by the probation officer and approved by the court. Defendant has appealed, arguing that his sentence is excessive in violation of the Louisiana Constitution. *706 Concluding to the contrary, we affirm.
The record reflects that Richard L. Coleman, a well educated and highly respected member of the community of Ruston, did on four separate occasions in 1983 and 1984, commit lewd and lascivious acts on the persons of two juveniles. The defendant admitted his offenses at the hearing at which he entered his pleas of guilty.
Defendant's offenses involved two neighborhood girls of the ages of seven and eight. He befriended these young girls, and during the course of the friendship, enticed them to participate in activities prohibited by LSA-R.S. 14:81. He also photographed the girls in a nude or seminude condition. In some photographs, the defendant was also present with each child in a nude or semi-nude condition. There was no evidence of any actual physical molestation or penetration, but the indications are to the effect that there was indeed fondling or close touching involving the children.
In his assignment of error, defendant complains that the sentence imposed upon him subjects him to an excessive punishment which is grossly disproportionate to the severity of the offenses to which he pled guilty. More specifically, defendant complains that the court failed to accept the uncontradicted testimony that pedophilia was the basis for the appellant's criminal activity. Moreover, he argues that this psychological and psychiatric disorder so afflicted him that he should not be held fully accountable for his actions. Secondly, the defendant claims that testimony adduced at the sentencing hearing indicated that he was not in need of correctional treatment in a custodial environment and that incarceration would be detrimental to his well being.
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983).
The sentencing guidelines of LSA-C. Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied, 438 So.2d 1112 (La. 1983).
Given the trial judge's adequate compliance with LSA-C.Cr.P. Art. 894.1, a sentence will not be set aside as excessive in the absence of a manifest abuse of the trial judge's wide sentencing discretion. State v. Nealy, 450 So.2d 634 (La.1984); State v. Knighton, 449 So.2d 1171 (La.App. 2d Cir. 1984). There is no manifest abuse of the trial judge's discretion unless the penalty imposed is so grossly disproportionate to the severity of the crime committed, in light of the harm caused to society, so as to shock the reviewing court's sense of justice. State v. Nealy, supra.
The background information adduced at the sentencing hearing reveals that the defendant was a highly educated and civic minded man who had enriched the community with his many good and fine works. Coleman, who had obtained a Ph.D. in child development and was an associate professor in the college of home economics at Louisiana Tech University, was an active member of his church where he served as an interpreter for the deaf during worship services. He was a member of the Lions Club and held various offices within that organization. He had designed and published numerous computer programs relative to the use of microcomputers in home management. He had established and directed the microcomputer laboratory in the *707 college of home economics at Louisiana Tech. During the period pending the resolution of the criminal charges, Dr. Coleman developed a computer program that would allow a quadriplegic to operate a computer. Indeed, the defendant's many accomplishments and honors including the outstanding alumni award from the University of Alabama, a nomination for Man of the Year Award by the Ruston Jaycees and the Ruston Chamber of Commerce, the Lion of the Year Award, and being named as an Outstanding Young Man of America, carved for him a particular place of respect in his community.
A review of the sentencing transcript indicates that the trial judge carefully considered this information and the testimony of defendant's various witnesses at the hearing and employed this information in particularizing the sentence to the offender. The trial judge complied with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1 and found that there was an undue risk that during the period of a suspended sentence or probation, the defendant would commit another crime. The trial judge noted that the defendant's personal psychiatrist, Dr. Alfred Jack Turner, admitted that the condition of pedophilia is one which is not easily cured and that there is a high percentage of recidivism in persons suffering from this disorder. Although Dr. Turner testified that he believed that the defendant's disorder manifested itself as the result of circumstances unlikely to reoccur and noted that the defendant possessed characteristics which indicated that he would be very successful in therapy, the trial court discounted this testimony. The trial court noted in its reasons for judgment that the testimony of Dr. Turner was "too self assured and too positive." The trial court also found that Dr. Turner was employed by the defendant and could be expected to benefit by rendering professional services if the defendant was given a suspended sentence.
The trial court noted with particular emphasis the statistics showing a very low rate of success in the treatment of pedophiliacs in combination with the fact that the defendant was professionally skilled and trained in the psychology of dealing with small children. The trial court felt that because of this particular training, the defendant would be in a position to influence children and to persuade them not to reveal improper activity to their parents. The trial court felt that since the defendant's behavior was brought about by years of conditioning, and was a condition not easily rectified, he was in need of correctional treatment best provided by custodial environment. The trial court also underscored its conclusion that a lesser sentence would deprecate the gravity of the offenses.
The trial court concluded that the defendant's conduct did in fact cause harm to the victims, that the only provocation that he acted under was within his own mind, that the victims did not facilitate the commission of the offenses, and that his conduct was the result of circumstances likely to recur.
A great deal of concern was expressed for the welfare of Dr. Coleman if he was placed in an institutional setting. His physical and mental well-being was raised as an issue in the sentencing hearing, and it is evident from the conditions placed on his imprisonment that they were thoughtfully considered. The trial court ordered that the defendant was to be given psychiatric treatment for his condition of pedophilia during his imprisonment; that he be placed in a minimum security institution and under protective custody; and that he be permitted to use his special training to counsel and assist other inmates. While these conditions may be only precatory, the inclusion of the conditions in the sentence indicate that the trial court seriously considered the potential danger to the defendant in a custodial environment. The court also noted that this risk is involved with every imprisonment to a certain degree and determined that it could not be used as an excuse for exempting a felon from an appropriate penalty.
The defendant argues that his status as a highly motivated achiever in the community *708 argues in mitigation of his sentence. This argument is a double edged sword. Considering the serious nature of the offense when coupled with the defendant's particular proclivity, it can be argued that his specialized training facilitated the commission of these offenses thus making the defendant especially dangerous, a fact which lends further support to the trial court's sentence determination.
For a conviction of four counts of indecent behavior with a juvenile, Coleman was susceptible to a possible twenty year sentence at hard labor and a $20,000 fine. Upon payment of all the fines and costs imposed upon defendant, he was actually sentenced to five years at hard labor and was placed on supervised probation for a period of ten years along with a $6,000 fine. The serious nature of defendant's offenses, befriending young girls and then performing lewd and lascivious acts upon them and in their presence, leads to the conclusion that there was no abuse of the trial court's discretion in the imposition of this sentence. The defendant's crime was not an isolated event but was apparently a course of conduct which lasted over a period of time. Dr. Coleman, a highly educated person, must have averted to the consequences and ramifications of his acts.
Therefore, it is the finding of this court that the sentence imposed is not so grossly disproportionate to the crime committed, in light of the harm caused to society, so as to shock this reviewing court's sense of justice. Thus, the sentence imposed by the trial court is affirmed.
AFFIRMED.
NOTES
[*] The minutes show the defendant was also originally indicted with two counts of pornography with a juvenile. This bill is not contained in this record. While the minutes show no disposition thereof, we assume those counts were dismissed as part of this plea bargain.